**AMERIKA SAMOA BANK, Plaintiff,**

**v.**

**AVA MALUA HUNKIN, and DOES
I through X inclusive, Defendants.**

High Court of American Samoa
Land and Titles Division

LT No. 04-00

April 14, 2000

Before RICHMOND, Associate Justice, TUAOLO, Chief Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiff, William H. Reardon
For Defendant, Reginald Gates

## OPINION AND ORDER

On February 18, 2000, Plaintiff Amerika Samoa Bank ("ASB") filed this action against Defendants Ava Malua Hunkin ("Hunkin") and unnamed persons to permanently enjoin them from interfering in any manner with use by B & B Properties ("B&B"), a general partnership, of certain land in Nuuuli, American Samoa, and for damages. A temporary restraining order was issued. Hunkin answered and counterclaimed for damages for ASB's unjust handling of his and his family's financial affairs.

ASB's application for a preliminary injunction was heard on February 28, 2000. ASB's counsel and Hunkin were present. A preliminary injunction was issued on March 1, 2000. Trial was scheduled for March 17, 2000 but was continued to March 21, 2000. On March 21, Hunkin appeared with counsel, and the trial was further continued to, and held on, March 28, 2000. Both counsel were present at trial.

In issuing the preliminary injunction, the Court also ordered that, in accordance with T.C.R.C.P. 65, the evidence received at the preliminary injunction hearing on the application for the preliminary injunction that would be admissible at a trial on the merits be made part of the trial record and need not be repeated at the trial.

### Discussion

During the 1980s, Hunkin was a customer of ASB while doing business as Paradise Development Company ("PDC"). ASB provided Hunkin with lines of credit, the last in October 1987 in the sum of up to $300,000, to procure materials for PDC from Pacific Reliant Industries, Inc. ("PRI"), a U.S. mainland business. When Hunkin/PDC failed to meet his contractual payment obligations to PRI, PRI sued to collect the $300,000 then owed and obtained a summary judgment against ASB in this amount on February 11, 1990. *See generally Pac. Reliant Indus., Inc. v. Amerika Samoa Bank*, 14 A.S.R.2d 41 (Trial Div. 1990). On April 3, 1992, after the Appellate Division affirmed the Trial Court's decision, *see generally Amerika Samoa Bank v. Pacific Reliant Indus.., Inc.*, 20 A.S.R.2d. 102 (App. Div. 1992), ASB paid PRI $338,958.93, which included post-judgment interest, to satisfy the judgment.

Based on his testimony, Hunkin argues first that neither he nor PDC breached the contract with PRI. However, in *Pacific Reliant*, the Trial Court clearly found that Hunkin/PDC defaulted in his payment obligations to PRI. 14 A.S.R.2d at 42-43. The Trial Court's decision was affirmed in all respects by the Appellate Division. *Amerika Samoa Bank*, 20 A.S.R.2d at 115. Regarding Hunkin's present contrary claim, the parties, subject matter, and issue in *Pacific Reliant* and in this action are identical. Thus, *Pacific Reliant* has *res judicata* effect in this action

with respect to Hunkin/PDC's liability based on non-payment of the contractual obligation to PRI.

On June 8, 1992, by stipulation, ASB's cross-claim against Hunkin in *Pacific Reliant* was dismissed after Hunkin executed a promissory note in the amount of $328,958.93 on June 1, 1992 to reimburse ASB. On December 31, 1992, the June 1 note was replaced by a second promissory note in the amount of $409,708.00 to cover both the reimbursement amount and Hunkin/PDCS additional indebtedness to ASB.

The promissory notes were secured by two mortgages and the personal guarantees of Hunkin and his wife Amy Hunkin.[1] The mortgaged property relates to two adjacent parcels within communal land known as "Mase`e" in Nuuuli. The first mortgage, executed on June 1, 1992, used the leasehold held by Hunkin and his wife on approximately 0.3673 acres of land and the improvements, consisting of the former Construction Services Ltd. ("CSL") building and parking area, on the land ("Parcel 2") as collateral for both the reimbursement and other indebtedness owed by Hunkin/PDC to ASB in the total amount of $408,858.40. The second mortgage, executed on December 31, 1992, used the leasehold held by Hunkin and his wife on approximately 0.2226 acres of land and the separated improvements, now consisting of Hunkin's residence and a Chinese restaurant, on the land ("Parcel 1") as additional collateral for Hunkin/PDC's total indebtedness, then $409,708.00, to ASB.[2] Thus, both the Parcel 1 and Parcel 2 properties

---

[1] Although the encumbrances were chronologically created in reverse order, we are retaining the same numerical identification used in the transaction documents in evidence, and in the order of March 7, 2000 issuing the preliminary injunction, for consistency and to avoid confusion.

[2] On December 2, 1969, Hunkin's wife acquired ownership of the building housing both the present residence and restaurant as her personal property for her residence by a separation agreement entered pursuant to A.S.C.A. §§ 37.1501-.1506. This agreement distinguishes the Parcel 1 properties from the Parcel 2 properties in that there is no agreement to separate the CSL building and parking area on the Parcel 2 land on the record before us. Thus it appears that the CSL building and parking area remain as real property without similar separation from the land as personal property.

We also note another distinctive feature, at least on the record in front of us, between the Parcel 1 and Parcel 2 properties. The Governor's approval, required for leases of communal land by A.S.C.A § 37.0221, of the lease of the Parcel 1 land, if any was given, is not in evidence, while the Governor's apparent approval is included with the lease of the Parcel 2 land and improvements.

secured the entire indebtedness as of December 31, 1992.

Hunkin's second argument concerns the validity of the notes and mortgages, particularly those executed on June 1, 1992. Hunkin testified that his attorney in *Pacific Reliant* made the settlement with ASB in 1992 without Hunkin's knowledge and consent. This is the same attorney, who now lives in Hawaii, that Hunkin wanted at first to represent him in this action. Hunkin asserted that he was surprised and shocked to learn of this settlement when ASB presented the promissory note and mortgage to him and his wife to sign on June 1, 1992. He stated that his attorney was then ill and not present. He claimed that the amount of the note was not revealed, that only the parcel 2 properties were then included as collateral, that the Parcel 1 properties were added later when ASB wanted more security, and that the attending ASB officials were extremely overbearing and forced him and his wife to sign the note and mortgage under duress and undue influence. However, Hunkin admitted that he and his wife signed the various notes and mortgages in June and December of 1992, and there is no indication that, at any time, he sought his attorney's assistance to undo these transactions. We find that Hunkin's testimony on the forced nature of these transactions to be wholly unpersuasive. Moreover, even if we were to find Hunkin credible on this point, we would hold him estopped from litigating the issue at this late juncture.

After Hunkin defaulted on the promissory note of December 31, 1992, ASB foreclosed the two mortgages, as permitted by the mortgage terms. On March 30, 1998, when no bids were made at the foreclosure sale, ASB bought all of the mortgaged property for $411,175.77, the amount then owing on the note. ASB permitted Hunkin and his immediate family to remain living in the Parcel 1 residence. Then, on September 3, 1998, ASB sold its interests in the Parcel 1 properties (the land along with the separated residence and restaurant building) acquired by the foreclosure to Hunkin for $150,000. Payment was expected to be derived from rental funds generated by the Chinese restaurant and another tenant.

ASB attempted to sell its interests in the Parcel 2 properties acquired by the foreclosure. In 1998, Green Gold Enterprise, Inc. made an offer, which ASB viewed as unbankable. In 1999, Hunkin-Hoong International, Inc. expressed interest but made no offer. Later in 1999, Native Resources Developer, Inc. made two offers, but again ASB considered neither offer to be bankable. Hunkin was associated with each of these entities. In December 1999, ASB accepted the offer of B&B to purchase ASB's interests in the Parcel 2 properties for $135,000. On February 7, 2000, ASB conveyed its interests in the Parcel 2

properties to B&B by warranty deed, agreeing to defend the title.[3]

The third and last theme of Hunkin's defense is his perception that ASB has treated him and his family harshly and insensitively. He spoke in particular of ASB's control over all financial aspects related to both the Parcel 1 and Parcel 2 properties, stripping him of all authority to manage the properties to meet his obligations to both repay ASB and support his family. We understand Hunkin's injured pride and his antagonistic feelings towards ASB. However, the removal of his authority and injured psyche are not the issue. He dug himself into a deep financial hole with his PDC operations and has been unable to extricate himself from this serious predicament. Hunkin needs to understand and accept that ASB is exercising its rights arising out of this situation to make itself as whole as possible, and to realistically address his and his family's precarious financial circumstances. B&B's entry into the situation will likely ease Hunkin's financial problems in the long run.

However, Hunkin reacted to the B&B transaction with a letter dated February 14, 2000 and hand-delivered to ASB's president, advising ASB that Hunkin would prevent anyone from entering the CSL building on land included in the Parcel 2 properties. On or about the same date, Hunkin caused three 20-foot shipping containers to be placed on the parking area on the Parcel 2 land. The containers occupy a substantial part of eastern side of the parking area. B&B has secured prospective tenants for the CSL building, but cannot proceed with these leases without Hunkin's assurances that he will not interfere with B&B's interests in and use of the Parcel 2 properties, or without judicially-imposed injunctive protection of those interests and use.

■ An applicant is entitled to a permanent injunction if, after a full and final trial on the merits of the applicant's claim, it is determined that "a judgment for money damages will inadequately remedy the complained

---

[3] The nature and extent of B&B's interests in the Parcel 2 properties is not presently an issue before the court for decision. We point out, however, the limitations on B&B interests on the record before us. The lease of the Parcel 2 properties, including the land and its improvements, apparently approved by the Governor, is in evidence. No agreement to separate the CSL building and parking area from the land area included in the Parcel 2 properties is in evidence. On this basis, at least, the CSL building, parking lot, and any other improvements on the land included in the Parcel 2 properties are part of the communal land and B&B has only acquired ownership of the outstanding leasehold in the land and those improvements. *See Sagapolutele v. Tala'i*, 20 A.S.R.2d 16, 18 n.2 (Land & Titles Div. 1991); *see generally Fagasoaia v. Fanene*, 17 A.S.R.2d 91 (Land & Titles Div. 1990) and 18 A.S.R.2d 72 (Land & Titles Div. 1991).

of wrong." A.S.C.A. § 43.1302. ASB lawfully obtained ownership of the mortgaged interests in the Parcel 2 properties, and B&B now owns ASB's interests in those properties as ASB's successor. ASB is obligated to defend its former and B&B's present title to the Parcel 2 properties. Hunkin threatens to prevent B&B from exercising its ownership rights and continually trespasses by the presence of the containers on the Parcel 2 parking area. B&B has prudently refrained from confrontation with Hunkin but cannot peacefully proceed with its leases of the Parcel 2 properties. It could become necessary to cancel ASB's sale of its interests in the Parcel 2 properties to B&B.

■ These facts clearly establish the criteria for issuance of a permanent injunction. ASB is entitled to protection of its interests in the acquisition and sale to B&B of the Parcel 2 properties. Money damages will not adequately provide that protection.

### Order

1. Hunkin, his officers, agents servants, employees and attorneys and those persons in active concert or participation with them are enjoined from trespassing, including any entry without B&B's consent, on or into the Parcel 2 properties (including the land, CSL building, and parking area) that ASB has transferred to B&B, or interfering with others' access or use of the Parcel 2 properties, provided that: (1) Hunkin, the immediate members of his family, and their invitees may cross the Parcel 2 land solely for the purpose of ingress to and egress from Hunkin's residence on Parcel 1 land to use and enjoy that residence, and subject to the terms and conditions of agreement with B&B, they may park their vehicles in the Parcel 2 parking area; and (2) the lessee of the restaurant and lessees of other premises on the Parcel 1 land, and the lessees' business customers and other invitees, may cross the Parcel 2 land solely for the purpose of ingress to and egress from the restaurant and any other leased premises on the Parcel 1 land, and subject to the terms and conditions of agreement with B&B, they may park their vehicles in the Parcel 2 parking area. The activities permanently enjoined extend and apply to any organization that Hunkin owns manages, or controls, including but not limited to South Pacific Life, and to any invitees participating in such activities.

2. Hunkin shall remove, or cause to be removed, from the Parcel 2 land the three containers presently on the Parcel 2 parking area no later than April 26, 2000. If Hunkin fails to comply with this order, ASB may remove, or cause to be removed, the three containers at Hunkin's expense.

3. ASB's claim for damages and Hunkin's counterclaim for damages are denied.

It s so ordered